guests and members to swim, the WCOA should have expected the public to encounter some of the dangers associated with the open body of water. The lake is an inviting scene for people to use for swimming in the summer months. Swimming in itself is not a highly dangerous activity. And in order to swim, one must first get into the body of water. A common method of getting into bodies of water is jumping or diving. Especially where a person has already jumped and dove into the lake and assumes to know its depth, that person would not be expected to realize that there was an undue danger associated with diving into the water another time. Viewing these inferences in the light most favorable to Cole, we conclude that the district court erred in finding that the open and obvious doctrine applied, because the WCOA should have anticipated its guests to come into contact with the lake.

We reverse the lower court's finding that the open and obvious doctrine applied to bar the WCOA's liability and remand the cause to determine the negligence of the WCOA consistent with the instructions in this opinion.

## VI. CONCLUSION

We affirm the lower court's ruling as to the Willers, and reverse, and remand for further proceedings as to the Taylors and the WCOA.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

STEPHAN, J., not participating.

———————

STATE OF NEBRASKA, APPELLEE, V.
TIUANA L. JOHNSON, APPELLANT.
___ N.W.2d ___

Filed March 13, 2015.    No. S-14-245.

1.  **Indictments and Informations.** A ruling on whether to allow a criminal information to be amended is made by the trial court in its discretion.
2.  **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.

3. **Sentences: Judgments: Words and Phrases.** An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
4. **Judges: Words and Phrases.** A judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition.
5. **Habitual Criminals: Sentences: Convictions: Proof.** There are no factual findings that the trial court must make, in order to enhance a defendant's sentence under the habitual criminal statutes, that are not a part of proving the fact of a prior conviction.

Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, Paul E. Cooney, and Mark Carraher, Senior Certified Law Student, for appellant.

Jon Bruning, Attorney General, George R. Love, and Mary C. Byrd, Senior Certified Law Student, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MCCORMACK, J.

## NATURE OF CASE
Tiuana L. Johnson was convicted of escape in violation of Neb. Rev. Stat. § 28-912(5)(a) (Reissue 2008) and sentenced as a habitual criminal. On appeal, Johnson does not challenge the underlying conviction for escape. Rather, he challenges the habitual criminal statute on its face and as applied. Johnson also asserts that the State's motion to amend the information was untimely and that his sentence was excessive.

## BACKGROUND
On June 21, 2013, Johnson was charged with Class III felony escape, under § 28-912(5)(a). In an amended information filed on August 15, 2013, Johnson was also charged with being a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 2008).

Johnson objected to the State's motion to amend the information to add the habitual criminal charge. The hearing on the State's motion to amend was held on August 15, 2013. Johnson argued that the county attorney had had ample time and that Johnson was ready to plead no contest to the charge in the original information. The State explained that it had been waiting to receive the record of two prior convictions that it wished to use in support of the habitual criminal charge. The State also observed that there was still plenty of time remaining for the State's statutory obligation to bring Johnson to trial. The court allowed the amendment. The amended information was filed on that same date.

Johnson thereafter filed a motion to quash the amended information insofar as it charged Johnson with being a habitual criminal. In the motion to quash, Johnson asserted that the habitual criminal statutory scheme was unconstitutional because it fails to provide for a jury determination of certain facts pertaining to the prior convictions. Johnson also asserted that application of the habitual criminal statutes violated double jeopardy because the same conviction that made the escape charge a Class III felony rather than a Class IV felony formed the basis of the habitual criminal enhancement. Johnson further asserted that the application of the habitual criminal statutes would violate a state constitutional provision, Neb. Const. art. I, § 15, requiring that penalties be proportionate to the offense. Finally, Johnson asserted that application of the habitual criminal enhancement would be cruel and unusual punishment. Johnson did not assert in the motion to quash that the untimeliness of the amendment to the information prejudiced his substantial rights.

The court overruled the motion to quash. Johnson waived his right to a jury trial and his right to a speedy trial. The underlying charge of escape was tried on November 25, 2013, on three stipulated exhibits, subject to Johnson's renewed motion to quash and the court's guarantee that it would not consider any other crimes, wrongs, or acts for purposes of determining whether Johnson committed the crime of escape. Additionally, Johnson stipulated that he was the person named in the exhibits.

These exhibits generally show that on September 20, 2012, Johnson was incarcerated following a conviction for the commission of an offense. He was out on an approved "Job Seeking pass" in Lincoln, Nebraska, and failed to return. Johnson committed a robbery in Omaha, Nebraska, that same day. Johnson was apprehended on September 28 and confessed to the escape and robbery.

The court found Johnson guilty of escape, in violation of § 28-912(5)(a). Upon the court's inquiry, Johnson's counsel indicated that she was "fine with" taking up the issue of enhancement.

In support of the habitual criminal charge, the court accepted into evidence five exhibits proffered by the State. Johnson did not make any objection to the exhibits other than those based on his prior motion to quash. The exhibits demonstrated that before his escape on September 20, 2012, Johnson had committed nine crimes for each of which he had been sentenced to a term of imprisonment for not less than 1 year.

The exhibits show that Johnson was convicted on October 24, 1997, of receipt of stolen property, in relation to events on June 19. He was not sentenced until May 11, 1998, at which time he was sentenced to 2 to 4 years' imprisonment.

On October 2, 1998, Johnson was convicted of robbery and a related use of a weapon charge in relation to events on March 22 and was sentenced to imprisonment for 2 to 4 years on the robbery conviction and 1 to 3 years on the use of a weapon conviction. Those sentences were ordered to be served consecutively with each other, but concurrently with the May 11 sentence for receipt of stolen property.

On July 31, 2003, Johnson was convicted of four counts of robbery under one docket and one count of burglary under a different docket. The robberies and burglary occurred on different dates between December 15, 2002, and January 6, 2003, and involved different victims. On September 17, 2003, Johnson was sentenced to 2½ to 5 years' imprisonment for each robbery, each sentence to be served consecutively. On

that same date, he was sentenced to 2 to 3 years' imprisonment for the burglary, to be served concurrently to the sentences for the robberies.

Finally, on February 8, 2010, Johnson was convicted under § 28-912(1)(5) of escape in relation to events on September 15, 2009. On April 28, 2010, Johnson was sentenced to 2 to 2 years' imprisonment for that crime.

The court also accepted into evidence, without any objection, printouts offered by Johnson of Nebraska inmate details from the Nebraska Department of Correctional Services. The printouts indicate that October 21, 2002, was the mandatory release date for the conviction of receipt of stolen property and the convictions of robbery and the related use of a weapon. Thus, Johnson was no longer serving those sentences at the time of the escape underlying this appeal.

At the close of the evidence, Johnson renewed his motion to quash. With regard to the double jeopardy challenge, Johnson argued that the State had failed to show two prior convictions for purposes of the habitual criminal charge that were both convictions under which Johnson was no longer detained at the time of his escape on September 20, 2012. Johnson explained that he believed the October 24, 1997, conviction for receipt of stolen property and the October 2, 1998, convictions for robbery and use of a weapon counted as only one conviction under the habitual criminal statutes, because the sentences for the robbery and use of a weapon convictions were to be served concurrently with the sentence for the receipt conviction.

## ASSIGNMENTS OF ERROR

Johnson assigns that the trial court (1) abused its discretion by improperly permitting the State to amend the information over Johnson's objection; (2) erred by improperly overruling Johnson's motion to quash, in violation of the 6th, 8th, and 14th Amendments to the U.S. Constitution and article I, §§ 6, 9, 11, and 15, of the Nebraska Constitution; and (3) abused its discretion by imposing an excessive sentence.

## STANDARD OF REVIEW

[1] A ruling on whether to allow a criminal information to be amended is made by the trial court in its discretion.[1]

[2] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.[2]

[3] An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[3]

## ANALYSIS

### TIMELINESS OF AMENDMENT
### TO INFORMATION

Johnson first argues that the trial court abused its discretion in allowing the State to amend its information to add the habitual criminal charge. He asserts that prior to the hearing on August 15, 2013, he was unaware of the State's intention to amend the information. Without providing any further detail, he generally asserts that "[t]he unexpected change of the allegations forced [Johnson] to quickly adjust his defense strategy in a manner that prejudiced [Johnson's] ability to exercise his constitutional right to effectively defend himself."[4]

[4] A ruling on whether to allow a criminal information to be amended is made by the trial court in its discretion.[5] A judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition.[6]

---

[1] *State v. Clark*, 8 Neb. App. 936, 605 N.W.2d 145 (2000).

[2] *State v. Payne*, 289 Neb. 467, 855 N.W.2d 783 (2014).

[3] *State v. Rieger*, 286 Neb. 788, 839 N.W.2d 282 (2013).

[4] Brief for appellant at 15.

[5] *State v. Clark, supra* note 1.

[6] *State v. Carlson*, 260 Neb. 815, 619 N.W.2d 832 (2000).

In *State v. Collins*[7] and *State v. Walker*,[8] we said that the defendant waived his objection with regard to the alleged untimeliness of the State's amendment of the information when the defendant failed to file a motion to quash. We explained that objections to the form or content of an information should be raised by a motion to quash.[9]

Johnson filed a motion to quash, but the alleged untimeliness of the amendment to the information was not one of the stated bases for the motion. Because Johnson did not raise in his motion to quash the alleged untimeliness of the State's amendment to the information, he waived that objection.

Furthermore, Johnson's bald assertion of prejudice fails to demonstrate that the trial court abused its discretion in allowing the amendment. In *State v. Cole*,[10] we held that the trial court did not abuse its discretion in allowing amendment of an information to add a habitual criminal charge on the day of trial. We explained that the habitual criminal charge was not heard until a week after the trial on the underlying charge had commenced. We said this was a reasonable time for the defendant to prepare his defense to the habitual criminal charge.[11]

Here, both the underlying trial and the hearing on the habitual criminal charge occurred more than 3 months after the State filed its amended information. And Johnson's counsel stated she was "fine with" continuing with the habitual criminal hearing on that date. Johnson, in fact, never moved for a continuance on the basis that he needed more time to prepare a defense to the habitual criminal charge. We will not conclude that Johnson was prejudiced by the timing of the amendment when he did not ask for a continuance, but, to the contrary,

---

[7] *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

[8] *State v. Walker*, 272 Neb. 725, 724 N.W.2d 552 (2006).

[9] *State v. Collins, supra* note 7; *State v. Walker, supra* note 8.

[10] *State v. Cole*, 192 Neb. 466, 222 N.W.2d 560 (1974).

[11] *Id.*

indicated he was prepared to address the habitual criminal charge at the hearing on August 15, 2013.[12]

## Right to Jury Trial

Next, Johnson argues that the habitual criminal statutes violate the right to a jury trial under the 6th Amendment and the Due Process Clause contained in the 14th Amendment to the U.S. Constitution and article I, §§ 6 and 11, of the Nebraska Constitution. It is not entirely unclear whether this is an as-applied or facial challenge to the statutory scheme. Regardless, we find it has no merit.

In *State v. Hurbenca*,[13] we held that under the U.S. Supreme Court's holding in *Apprendi v. New Jersey*,[14] the determination of whether a defendant has prior convictions that may increase the penalty for a crime beyond the prescribed statutory maximum is not a determination that must be made by a jury. We noted that, as stated in *Apprendi*, the fact of a prior conviction is not a fact that relates to ""'"the commission of the offense" itself . . . .'"[15] Therefore, such fact is a "narrow exception to the general rule that it is unconstitutional for a legislature to remove from a jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed."[16] We noted that the Court in *Apprendi* had said, "'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. . . .'"[17]

Johnson asks us to reconsider our decision in *Hurbenca* in light of the subsequent decision by the U.S. Supreme

---

[12] See, e.g., *State v. Collins, supra* note 7; *State v. Mills*, 199 Neb. 295, 258 N.W.2d 628 (1977).

[13] *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003).

[14] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[15] *State v. Hurbenca, supra* note 13, 266 Neb. at 858, 669 N.W.2d at 672.

[16] *Id.*

[17] *Id.* at 857-58, 669 N.W.2d at 672.

Court in *Blakely v. Washington*.[18] Johnson fails to explain how the *Blakely* decision changed the U.S. Supreme Court precedent that we relied upon in *Hurbenca*. Instead, in his brief, Johnson points only to the *Apprendi* proposition we applied in *Hurbenca*.

Regardless, Johnson's argument is based on a false dichotomy. Johnson attempts to parse the mere fact of a prior conviction from facts Johnson claims are necessary to prove that prior conviction for purposes of enhancement. Citing *State v. Johnson*,[19] Johnson characterizes such independent facts as (1) the nature of the prior convictions, (2) whether the prior convictions were based upon charges separately brought and tried, (3) whether the prior convictions arose out of separate and distinct criminal episodes, and (4) whether the defendant was the person named in each prior conviction.

[5] We have repeatedly held that under our habitual criminal statutes, there is no required showing by the State beyond "the question of determining whether a [valid] conviction [for purposes of § 29-2221] has or has not been had."[20] In other words, there are no factual findings that the trial court must make, in order to enhance a defendant's sentence under the habitual criminal statutes, that are not a part of proving the fact of a prior conviction.

The four facts listed by Johnson have never been set forth in our case law as a list of separate and necessary findings in a habitual criminal proceeding. But to the extent that Johnson correctly identifies factual elements of the State's burden in establishing two valid prior convictions for purposes of § 29-2221, those factual elements are not separate and apart from the fact of a prior conviction. Those facts are the means by which the State proves the fact of the prior convictions.[21]

---

[18] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[19] *State v. Johnson*, 7 Neb. App. 723, 585 N.W.2d 486 (1998).

[20] *Danielson v. State*, 155 Neb. 890, 894, 54 N.W.2d 56, 58 (1952).

[21] See, *State v. Ellis*, 214 Neb. 172, 333 N.W.2d 391 (1983); *State v. Roan Eagle*, 182 Neb. 535, 156 N.W.2d 131 (1968); *Danielson v. State, supra* note 20. See, also, *State v. Johnson, supra* note 19.

We find no merit to Johnson's argument that such aspects of proving a valid prior conviction under the habitual criminal statutes must be determined by a jury.

## Double Jeopardy

Johnson alternatively argues that the habitual criminal statutes as applied violated constitutional principles prohibiting double jeopardy.

Section 28-912(5)(a) provides that escape while detained following a conviction is a Class III felony, while § 28-912(4) provides that escape from detention under other circumstances specified in § 28-912(1) is a Class IV felony. Section 29-2221(1) states that "[w]hoever has been twice convicted of a crime, sentenced, and committed to prison, . . . for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal" and have his felony sentence enhanced accordingly. Johnson asserts that the "dual use"[22] of the same conviction to support escape under § 28-912(5)(a) and enhancement of his sentence under § 29-2221 is unconstitutional.

In support of his argument, Johnson relies on cases in which we have rejected habitual criminal enhancement of sentences imposed for third-offense driving while intoxicated or third-offense driving with a suspended license, where at least one of the two prior convictions supporting the habitual criminal charge was also the basis for the third-offense conviction and its accompanying enhanced sentence for that recidivist conduct.[23] He argues that these cases stand for the proposition that such dual use of the same prior conviction for purposes of enhancing a sentence is unconstitutional.

But the double jeopardy question Johnson raises is not before us on the facts presented. Without needing to decide, in accordance with *State v. Ellis*[24] and its progeny, the exact number of prior convictions proved by the State under

---

[22] Brief for appellant at 21.

[23] See, *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999); *State v. Chapman*, 205 Neb. 368, 287 N.W.2d 697 (1980).

[24] *State v. Ellis, supra* note 21.

§ 29-2221, we reject Johnson's general assumption that all convictions under which the inmate is serving a sentence at the time of his or her escape must be considered as bases for enhancement under § 28-912(5) for purposes of a double jeopardy analysis. Johnson does not otherwise deny that there are at least three separate prior convictions proved by the State under § 29-2221, and we see no legal basis for him to have done so. Accordingly, we conclude that the same conviction did not constitute the basis for both the Class III felony escape enhancement and enhancement under the habitual criminal statutes.

We do not decide whether, under different facts, it would be unconstitutional or otherwise erroneous to utilize the same prior conviction both under a statutory enhancement that is not based on recidivism and under the habitual criminal statutes. In this case, because the State proved at least two prior convictions that were not necessary to support the conviction of escape under § 28-912(5), there is no "dual use" of the same prior conviction.

EXCESSIVE AND DISPROPORTIONATE
SENTENCING AND CRUEL AND
UNUSUAL PUNISHMENT

Finally, Johnson argues that application of the habitual criminal charges resulted in a penalty disproportionate to the nature of the offense, in violation of article I, § 15, of the Nebraska Constitution; that his sentence was excessive; and that his punishment was cruel and unusual in violation of the Eighth Amendment to the U.S. Constitution.

In *Ewing v. California*,[25] the U.S. Supreme Court rejected the argument that a habitual criminal statute resulted in cruel and unusual punishment. The Court explained:

[T]he State's interest is not merely punishing the offense of conviction, or the "triggering" offense: "[I]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that

[25] *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003).

they are simply incapable of conforming to the norms of society as established by its criminal law."[26]

The enhanced sentence, the Court reasoned, "is justified by the State's public-safety interest in incapacitating and deterring recidivist felons."[27] In *State v. Chapman*,[28] we similarly rejected the general contention that the habitual criminal statutes impose penalties in disproportion to the nature of the offense.

The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding a defendant's life.[29] An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[30]

Johnson points out that his escape did not involve the use or threat of force, nor any "dangerous instrumentality to effectuate the escape."[31] He also claims, without explanation, that the court abused its discretion in considering violations other than the relevant escape conviction for which Johnson was being sentenced. Finally, he argues that the current sentence ignores certain unspecified "rehabilitative needs."[32]

Although Johnson's escape was not violent, we find the application of the habitual criminal enhancement and the resulting sentence of 10 to 20 years' imprisonment to be neither excessive, disproportionate, nor cruel and unusual. The punishment was appropriate given Johnson's extensive criminal record. We note that in addition to the felonies evidenced in support of the

---

[26] *Id*. at 29 (quoting *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980)).

[27] *Id*.

[28] *State v. Chapman, supra* note 23.

[29] *State v. Nelson*, 276 Neb. 997, 759 N.W.2d 260 (2009).

[30] *State v. Rieger, supra* note 3.

[31] Brief for appellant at 27.

[32] *Id*. at 30.

habitual criminal charge, the presentence investigation report reveals more than two dozen misdemeanors. We also find it pertinent that this is not his first conviction for escape.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.